IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  19-10077-JWB |
| | ) | |
| YINJUAN PANGELINAN, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the court on the government's motion to permit sworn testimony by video (Doc. 49).  The motion has been fully briefed and the court held an evidentiary hearing on this matter on August 27, 2020. (Doc. 51.)  For the reasons stated herein, the government's motion is DENIED.

**I.      Facts and Background**

This matter is set for trial on September 1, 2020.  On April 23, 2019, the grand jury returned an indictment charging Defendant with two counts of attempted coercion and enticement, under 18 U.S.C. §§ 2422 and 1952(a)(3).  During the investigation of this matter, law enforcement used a cooperating human source who was recorded on calls with Defendant regarding the sale of Defendant's business, which is alleged to be a prostitution business.  According to the government, the calls contain discussions regarding sex acts performed in the business, the number of customers, the purchase-price, and travel arrangements.  (Doc. 38 at 1-2.)  The calls are largely in Mandarin and therefore were required to be translated into English.  There were 22 calls that were

translated by Daniel Chan, Brenda Lau, and Tina Zheng, language specialists with the United States Citizenship and Immigration Services, who are all located in New York. (Doc. 48.)

Previously, the court entered an order regarding the transcripts after the parties filed motions in limine regarding the admissibility of the same. (Doc. 47.) In that order, the court required Defendant to identify its language expert and to identify the transcripts, or portions of the transcripts, which were in dispute. Defendant did provide the government with its expert's transcripts for five of the calls. Because the transcripts are at issue in this case and the government will need to authenticate the transcripts provided by its experts, the language experts must provide testimony in this case. Notably, the parties do not dispute that the calls are the key evidence in the case against Defendant. Also, the cooperating human source will not be called by the government as a witness in the trial.

The government has now moved to allow the three expert witnesses to appear by two-way video. In its motion, the government's argument is primarily based on the current COVID-19 pandemic and the witnesses' potential risk of contracting COVID-19 during travel or while in Kansas. The government also asserts that two of the witnesses or their household members have various medical conditions that would place them at higher risk for complications if they contracted COVID-19. Additionally, all of the government's experts reside in New York. Due to an executive order entered by the governor, New York requires its residents to quarantine for 14 days after returning from certain states, including Kansas.

At the hearing, the government's experts testified (by way of video) regarding their personal situations. Mr. Chan testified that he lives with his wife and mother-in-law, who is in her seventies. Mr. Chan had hand surgery three weeks ago and is still recovering. He has difficulties using his right hand and experiences pain in his arm at times. Mr. Chan also testified that he is

concerned about contracting COVID-19 due to his mother-in-law's health conditions, which include thyroid cancer, hypertension, osteoporosis, and sciatica.

Ms. Lau testified that she does not have any medical conditions that would place her in a higher risk category if she contracted COVID-19. She is concerned for her health and the health of her adult children who reside with her. The adult children do not have any underlying medical conditions.

Ms. Zheng testified that she lives with her two young children and an elderly mother. Ms. Zheng cares for the family as her mother has hypertension, is a borderline diabetic, and has dementia. Ms. Zheng is also under treatment and will undergo a procedure next month. Ms. Zheng's children have asthma and she is concerned about their health if she were to contract COVID-19.

## II.  Analysis

The government seeks to present the trial testimony of three witnesses by video due to the current COVID-19 pandemic, two of the witnesses' health conditions and the health conditions of those two witnesses' family members, and a state requirement that the witnesses quarantine for 14 days after their return from providing testimony. The government argues that these times are unprecedented and that the cases of COVID-19 are increasing, especially in Kansas. Defendant objects to the witnesses appearing by video, asserting that it violates her right to confrontation.

In *Maryland v. Craig*, 497 U.S. 836 (1990), the Supreme Court held that a Maryland statute that provided that victims in cases involving child sex abuse could testify in a separate room on a one-way monitor where they could not see the defendant, but the defendant could see them, was not a violation of the Confrontation Clause. *Id.* at 851-52. The Court stated that "the Confrontation Clause reflects a *preference* for face-to-face confrontation," but that this preference "must

occasionally give way to considerations of public policy and the necessities of the case." *Id.* at 849 (emphasis in original).  The defendant's right to confront accusatory witnesses "may be satisfied absent a physical, face-to-face confrontation at trial [] where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id.* at 850.  In *Craig*, the Court held that the important public policy in such a case was to protect a child witness from trauma.  *Id.* at 857.  The trial court, however, must also make a finding of necessity in each case and determine whether the procedure was necessary to protect the welfare of the child witness.  *Id.* at 855.

In response to *Craig*, a statute was enacted that permits child witnesses to testify by 2-way closed circuit television if the court makes certain findings.  18 U.S.C. § 3509(b).  The Supreme Court has yet to expand *Craig* or address whether two-way video, by the use of video conferencing technology where the witness is in another location, is subject to the same standards under *Craig* or more lenient standards.  Defendant argues that *Craig* is a narrow standard that is not applicable here.  With the exception of the Second Circuit, which applied a more lenient standard, however, courts have applied the *Craig* standard in determining whether a witness may testify by two-way video.  *United States v. Gigante*, 166 F.3d 75, 81 (2d Cir. 1999) (holding that the *Craig* standard was not applicable because it was a two-way video and witness could see the defendant); *United States v. Carter*, 907 F.3d 1199, 1206 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 2743 (2019), and *cert. denied*, 139 S. Ct. 2743 (2019) (applying *Craig* standard); *United States v. Yates*, 438 F.3d 1307, 1315 (11th Cir. 2006) (same); *United States v. Casher*, No. CR 19-65-BLG-SPW, 2020 WL 3270541 (D. Mont. June 17, 2020).

The Tenth Circuit has recognized that the *Craig* standard is applicable when determining whether the confrontation requirement has been met absent physical, face-to-face confrontation.

*See United States v. Kaufman*, 546 F.3d 1242, 1254–55 (10th Cir. 2008) (discussing standard); *United States v. Farley*, 992 F.2d 1122, 1124 (10th Cir. 1993). Therefore, Defendant's right to confrontation in this case is satisfied if the court finds that 1) the "denial of such confrontation is necessary to further an important public policy," and 2) "the reliability of the testimony is otherwise assured." *Craig*, 497 U.S. at 850.

The government asserts that the important public policy concerns at issue in this case are the prosecution of sex traffickers and those who abuse women, and limiting the spread of the virus. (Doc. 49 at 6.) The government has identified important public policies. However, the government must show that the denial of face-to-face confrontation is *necessary* here to further those policies. In support of the government's position, it has cited various cases allowing video testimony. Those cases, however, are distinguishable. A notable theme throughout these cases involve witnesses who had an indefinite inability to travel or were gravely ill.

In *Gigante*, the Second Circuit upheld the district court's decision allowing a witness to appear by video. 166 F.3d at 75. Notably, the witness in *Gigante* was a former associate of a crime family, which included the defendant. The witness had been in the witness protection program for many years, was in the final stages of inoperable cancer, under medical supervision, and his doctor testified that it would be medically unsafe for him to travel. *Id.* at 79. In that case, there was significant evidence that the witness could not travel, and this was not a temporary illness.

In *United States v. Benson*, 79 F. App'x 813, 821 (6th Cir. 2003), the Sixth Circuit upheld the district court's decision to allow an 85-year-old witness to testify by video. The court found that the elderly witness was too ill to travel. She had extensive health problems and was still recovering from a major surgery. In *United States v. Rosenau*, 870 F. Supp. 2d 1109 (W.D. Wash.

2012), the court allowed the witness to testify remotely from Canada. Notably, the witness was unable to enter the United States due to a court order. Moreover, the defendant could not travel to Canada for the witness's deposition as Canada refused to allow the defendant to enter the country. *Id.* at 1112.

In another case that was not cited by the government, the court allowed several elderly witnesses to appear by video. *United States v. Sapse*, No. 2:10-CR-00370-KJD, 2012 WL 5334630, at *1 (D. Nev. Oct. 26, 2012). The court found that these witnesses could not take care of themselves and were in the care of various caretakers. The witnesses were "severely disabled to the point that at least four of the six have lost the use of their legs, many [were] incontinent, several require[d] the aid of permanent caregivers and [could not] perform the most basic functions of life without assistance." *Id.* Notably, the defendant preyed upon these types of victims.

Both the Ninth and Eleventh Circuit have reversed district courts for allowing video testimony when there were sufficient alternatives. In *Yates*, the Eleventh Circuit reversed the district court when it allowed Australian witnesses to testify by video because they were unwilling to travel to the United States. 438 F.3d at 1315. The court of appeals held that it was not necessary to deny the defendant his right in that case because there was an alternative to video testimony, including the ability to conduct a Rule 15 deposition. *Id.* at 1317-18. In *Carter*, the district court had allowed a witness to testify remotely because her doctor stated that she could not travel due to pregnancy complications. 907 F.3d at 1203. The Ninth Circuit reversed, finding that the necessity requirement was not met as the condition was temporary and there were alternatives to video testimony including a continuance. *Id.* at 1208-09.

Notably, although we are in the middle of the COVID-19 pandemic, it appears that there has only been one court to consider this issue. In *Casher*, the witnesses presented some of the

same concerns that are at issue here.  2020 WL 3270541 at *1.  One witness had medical risks that placed him at high risk of complications if he were to contract COVID-19.  The other witness did not have any health issues.  Both witnesses had concerns about the virus.  The court held that these risks "do not represent a 'necessity' to forego physical confrontation."  *Id.* at *3.

The court agrees that prosecution of sex traffickers and limiting the spread of the virus are important public policy concerns.  The court also notes that two-way video testimony might be a reasonable resolution due to the witnesses' health concerns and these unprecedented times with the virus.  However, the question is whether the government has shown it is *necessary* to deny face-to-face confrontation to further these public policies.  The government has not made that showing and the court finds that there are alternatives available in this case.

While these witnesses have understandable concerns about the virus, which are very real concerns, none of the witnesses have contracted the virus.  Moreover, although Mr. Chan and Ms. Zheng have some health issues, there is no evidence that they are physically unable to travel like the witnesses in *Gigante*, *Benson* and *Sapse*.  Those witnesses also had no prospects of recovery. The cases that allowed video testimony are different than what we have here in two important ways: the government's expert witnesses' testimony is crucial but, as noted by the government, the witnesses are providing testimony regarding a translation of calls which could be testified to by another qualified interpreter; the court could also continue this matter until the transmission rate of the virus improves.  The hearing in this matter also brought to light another issue with video testimony, which includes potential communication issues.  During a trial, a witness is in the courtroom and can see all parties to determine whether a question is presented to the witness, an attorney has made an objection, or the judge is speaking.  During the video testimony at the hearing, Mr. Chan continued to testify after there was an objection and the undersigned was

speaking. Mr. Chan was told not to speak but he continued to do so. It was clear that Mr. Chan was confused as to who was speaking and whether he had been presented with a question. Clearly, this could create issues during the jury trial -- issues that would not be present if the government obtained another local expert witness to offer the same testimony or proceeded with only one of its witnesses and had that witness testify as to all of the calls. *See Carter*, 907 F.3d at 1207 (discussing that there are practical differences between face-to-face confrontation and virtual confrontation).

The court finds that the government has not shown that it is necessary to present the witnesses' testimony by video to further important public policies. Under the circumstances here, there are reasonable alternatives which would allow this case to proceed, including a continuance. *Carter*, 907 F.3d at 1208. During that time, the government may locate a different expert, who is within driving distance to the courthouse, to translate the calls or have Ms. Lau, who does not have an underlying health condition, review all of the transcripts so that only one witness is coming from New York.

In lieu of the requested video testimony, at the end of the evidentiary hearing the government moved for a continuance to pursue one or more replacement translators or otherwise make arrangements for the necessary translators to appear at trial. For the foregoing reasons, the court finds that additional time is necessary for counsel's effective preparation, taking into account counsel's exercise of due diligence. See 18 U.S.C. § 3161(h)(7)(B)(iv). Indeed, the court notes that as of the date of this order, no criminal trials have been conducted in this district since the pandemic forced the continuance of all in-person proceedings, and complications associated with out-of-state witnesses and their associated travel continues to hamper the resumption of in-person proceedings such as this trial. The court further finds that the period of delay resulting from this continuance

shall be excluded in computing time under the Speedy Trial Act, because the ends of justice served by granting this continuance outweigh the best interest of the public and Defendant in a speedy trial. See 18 U.S.C. § 3161(h)(7).

### III.    Conclusion

The government's motion (Doc. 49) is DENIED.  The trial is continued to October 6, 2020, U.S. Courthouse, Wichita, Kansas, Courtroom 238.  The time from the current trial setting of September 1, 2020, until October 6, 2020, is excluded under the Speedy Trial Act.  A Status Conference is scheduled for September 21, 2020, at 9:00 a.m., U.S. Courthouse, Wichita, Kansas, Room 232.

IT IS SO ORDERED.  Dated this 31st day of August  2020.

_____ s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE